IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN G. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:03cv849-A |
| | ) | |
| WAL-MART STORES EAST, L.P., et al., | ) | (WO) |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

On November 10, 2004, this court issued a Memorandum Opinion and Order (Docs. # 88, 89) regarding separate Motions for Summary Judgment filed by Defendants Wal-Mart Stores East, L.P. ("Wal-Mart"), Gary Callin, Danny Dorn, and Michael Reese (collectively referred to as "Wal-Mart Defendants") (Doc. #59) and Defendants Detective Dewayne Johnson, Detective Billy Gordon, Detective Mark Mitchell, Lieutenant Mike Gant, and Major Mike Coker (collectively referred to as "city Defendants") (Doc. #61), both filed on August 23, 2004.  In accordance with the Memorandum Opinion, the court: 1) granted the Motion for Summary Judgment by Defendants Wal-Mart, Callin, Dorn, and Reese and dismissed Wal-Mart, Callin, Dorn, and Reese with prejudice; 2) denied the Motion for Summary Judgment by Defendants Johnson, Gordon, and Mitchell; and 3) granted the Motion for Summary Judgment by Defendants Gant and Coker, and dismissed Gant and Coker with prejudice.  The court indicated that the case would proceed to trial against Defendants Johnson, Gordon, and Mitchell on Plaintiff's claims of malicious prosecution in violation of state law and unlawful seizure and

malicious prosecution in violation of Plaintiff's Fourth and Fourteenth Amendment rights.  See
Nov. 10, 2004 Mem. Op. and Order regarding Defs. Mots. for Summ. J.

On November 17, 2004, this court received Defendants Johnson, Gordon, and Mitchell's
Notice of Appeal to the Eleventh Circuit Court of Appeals, and granted a motion to stay the
proceedings.  In an Order and Judgment entered on April 15, 2005, issued as Mandate on May
17, 2005, the Eleventh Circuit Court of Appeals remanded this case for further proceedings.  In
accordance with the directions contained therein, on May 27, 2005 this court ordered the
Plaintiff, John G. White, to file a Supplemental Brief as to each separate claim as to which a
defense of immunity has been asserted by each separate Defendant, setting out (1) precisely
which allegations of the Third Amended Complaint relate to the claim, citing the applicable
paragraphs of the Third Amended Complaint but not simply incorporating them by reference,
and (2) identifying each piece of admissible evidence that purportedly supports the claim,
together with argument as to why all the specific evidence cited in support of the claim creates a
material issue of fact.  White filed his first Supplemental Brief on June 22, 2005.  See Pl. Resp.
to Court's Order Dated May 27, 2005 ("White's Supplemental Brief #1) (Doc. #110).[1]  The court
also ordered the Defendants asserting the immunity defenses, Dewayne Johnson, Billy Gordon,
and Mark Mitchell, to file a reply brief.  See Defs. Johnson, Gordon, and Mitchell's Reply to Pl.
Resp. to the Court's Order Dated May 27, 2005 ("Johnson/Gordon/Mitchell Supplemental

---

[1] Because White's initial supplemental brief failed to comply with previous orders of the
court as to what is necessary to support or oppose a motion for summary judgment, this court
ordered White to file an additional supplemental response specifying by page and line numbers
any portions of cited exhibits which he wishes to be considered in this matter.  White filed this
supplemental response to his supplemental brief on July 1, 2005.  See Pl. Supp. Resp. Pursuant
to Court's Order Dated June 29, 2005 ("White's Supplemental Brief #2") (Doc. #114).

Brief") (Doc. # 115).  On July 15, 2005, the Motion for Summary Judgment was taken under submission for determination without oral argument.  Additionally, on July 15, 2005, Johnson, Gordon, and Mitchell filed a Renewed Motion to Strike (Doc. #116).  White responded on July 20, 2005, and the court granted Johnson, Mitchell, and Gordon's Motion for leave to file a Reply on July 25, 2005 (Doc. #121).  The renewed motion to strike was then taken under submission without oral argument.

As a result, this case is before the court on Defendants Johnson, Mitchell, and Gordon's Renewed Motion to Strike and Defendants Johnson, Mitchell, and Gordon's Motion for Summary Judgment, supplemented by the parties' additional briefing.  For the reasons discussed below, Defendants' Renewed Motion to Strike is due to be Granted, and Defendants' Motion for Summary Judgment is due to be Granted.

## II.  RENEWED MOTION TO STRIKE DISCUSSION

Johnson, Gordon, and Mitchell filed a renewed motion to strike Exhibit 10 of White's Response Brief in Opposition to Defendants' Motions for Summary Judgment.  Plaintiff's Exhibit 10 is an unsworn statement by Tim Lagrone dated March 9, 2002.  Lagrone, after retiring from the police department, stated that he feared retaliation from the administration of the Montgomery police department if he did not positively identify the suspect in question as White and that he can no longer positively say that the man in the video was White.  See Pl. Resp. Br. to Defs. Mot. for Summ. J., Exh. 10 ("Plaintiff's Exhibit" 10).[2]

―――――――――――――

[2] The statement reads in full:

To whom it may concern:

On 6-21-99 I wrote a statement to detective D.A. Johnson

In an earlier ruling, this court denied Defendants' motion to strike Exhibit 10, relying, in part, on the analysis applied to investigatory reports. As pointed out by Johnson, Mitchell, and Gordon, however, this Exhibit was produced months after White's criminal charges were ultimately dismissed, long after any police investigation. Additionally, the court stated that evidence presented at the summary judgment stage need not be in a form that would be admissible at trial, see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), but rather the evidence must be capable of being "reduced to admissible form" at trial for a court to properly consider it. See Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999). The Macuba v. Deboer court explained that:

> [it] believe[s] that the courts have used the phrases 'reduced to admissible evidence at trial' and 'reduced to admissible form' to explain that the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose. For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence).

Id. at 1323-24. In other words, the "reduced to admissible evidence at trial" language alone does not necessarily excuse unsworn statements. In Macuba, the Eleventh Circuit discussed "cases applying Celotex, 'as simply allowing *otherwise admissible evidence* to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form,'" (emphasis added in Macuba) and concluded that there, "as in McMillian[ v.

---

identifying John White in a video. I knew that if I failed to write a statement positively identifying John White after I said the subject in question looked like John White I would face retaliation from the administration of the Montgomery Police Department. Now that I have retired from the Montgomery Police Department I can honestly say that I am not positively sure that the person in the video I saw was John White.

Johnson], the hearsay statements were not 'otherwise admissible.'" Id. at 1324 (citing 88 F.3d 1573, 1584 (11th Cir. 1996)).

Upon reconsideration, this court finds the Eleventh Circuit's conclusion in Carr v. Tatangelo applicable, in that, "[u]nsworn statements 'do[ ] not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion." See 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n. 17 (1970)).  Furthermore, the statement does not qualify for the statutory exception to this rule under 28 U.S.C. § 1746 because it was not given under the penalty of perjury and certified as true and correct.  As a result, Plaintiff's Exhibit 10, Lagrone's undisputedly unsworn statement, is inadmissible and due to be stricken.

### III.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex, 477 U.S. at 322.

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has

failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor.  See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## IV.  MOTIONS FOR SUMMARY JUDGMENT DISCUSSION

A.  Federal Claims

On remand, the Eleventh Circuit Court of Appeals required White to tell this court "which allegations among the 153 paragraphs of his prolix third amended complaint relate to which claim (i.e., a claim that is subject to one of appellants' immunity defenses).  Next, with respect to such claim . . . [White should] identify each piece of admissible evidence that purportedly supports it."  Apr. 15, 2005 Eleventh Cir. Per Curiam Op. at 3.  In White's Supplemental Briefs, White clarifies which claims relate to which appellant.  Specifically, White brings: 1) a section 1983, Fourth Amendment malicious prosecution claim against Johnson and

Mitchell; 2) a section 1983, Fourth Amendment false arrest/imprisonment claim against Johnson and Mitchell; and 3) a presumably section 1983, Fourth Amendment unlawful seizure claim against Gordon.[3]

Johnson, Mitchell, and Gordon raise the defense of qualified immunity.  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991).  It applies to the assertion of constitutional and federal statutory claims brought against state actors.  See Gonzalez v. Lee County Housing Auth., 161 F.3d 1290, 1295 (11th Cir. 1998).  Government officials performing discretionary functions are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  There is no dispute that Johnson, Mitchell, and Gordon were acting within their discretionary authority as public officials at all times relevant to this case.  Accordingly, the issue before the court is whether White's evidence presents a triable issue of fact as to whether Johnson, Mitchell, and Gordon's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.  See Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir. 1999).

---

[3] White does not label the claim as a federal cause of action in either of his supplemental briefs.  Nonetheless, in White's Third Amended Complaint he titles a claim "§1983 - Fourth Amendment: Unlawful Seizure Against Defendant Gordon."  See Pl. Third Amended Compl. (Doc. #86).  Additionally, in describing the claim in Supplemental Brief #1, White notes generally that defendants assisted Wal-Mart in violating "Plaintiff's constitutionally protected rights."  Pl. Supp. Br. #1, p. 6.  As a result, this court assumes White is discussing a federal cause of action.

Where it is not evident from the allegations of a complaint alone that the defendants are entitled to qualified immunity, as was the case here when the court denied Johnson, Mitchell, and Gordon's motion to dismiss, a case will proceed to the summary judgment stage.  The summary judgment stage is the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation.  See Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002) (citing Behrens v. Pelletier, 516 U.S. 299 (1996)).  Even at the summary judgment stage, not all defendants entitled to the protection of the qualified immunity defense will receive it.  The ones who should be given that protection at the summary judgment stage are those who establish that there is no genuine issue of material fact preventing them from being entitled to qualified immunity.  See id.  If the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, both the case and the qualified immunity issue will proceed to trial.  See id.

Generally, a court required to rule upon the qualified immunity issue must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  See Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be established based upon a favorable view of the plaintiff's submissions, the next, sequential step is to ask whether the right was clearly established.  See id.

This court finds that at summary judgment stage, White fails to present sufficient evidence of misconduct by Johnson, Mitchell, and Gordon necessary to create a genuine issue of material fact.  In the November 10, 2004 Memorandum Opinion and Order regarding Defendants' Motions for Summary Judgment, this court noted "the overwhelming amount of instances throughout Plaintiff's pleadings and evidentiary submissions where 'factual allegations' are left wholly unsupported or evidence is [inadmissible] and therefore not considered by this court."  In fact, despite White's voluminous exhibits in support, the November 10, 2004 opinion denying Johnson, Mitchell, and Gordon summary judgment was based solely on Plaintiff's Exhibit 10, an exhibit this court has now ruled inadmissible and not to be considered.  Logic would hold that if only one exhibit entitled White to a trial, and that exhibit is now stricken, then White is no longer entitled to a trial.  By adopting the analysis in the court's earlier Memorandum Opinion and Order, Johnson, Mitchell, and Gordon's motion for summary judgment (denied on the basis of the now-stricken exhibit) is due to be granted. Nonetheless, in view of the Eleventh Circuit's direction, this court deems it prudent to address each of the evidentiary submissions detailed in White's Supplemental Briefs.[4]

While White's Supplemental Briefs allege three claims, he essentially cites the same exhibits for all of his federal claims against Johnson, Mitchell, and Gordon.  In fact, though White's Supplemental Briefs break down his claims as 1) § 1983 malicious prosecution claims against Johnson and Mitchell; 2) § 1983 false arrest/imprisonment against Johnson and Mitchell; and 3) unlawful seizure claim against Gordon, the vast majority of his assertions in all three

---

[4] See Eleventh Cir. Per Curiam Op. (stating the court shall state the facts . . . that support such claim[s].").

9

claims are supported with recycled boilerplate statements and citations.[5]  With the exception of Exhibits 12, 14, and 18, which White uses only to support his claims against Johnson and Mitchell, every piece of evidence[6] is used to support claims against all three Defendants.[7]

1.      § 1983 Fourth Amendment Malicious Prosecution claim against Johnson and Mitchell

In support of the federal causes of action against Johnson and Mitchell, White argues there is evidence to support a finding of misconduct on Johnson and Mitchell's part in obtaining White's arrest, indictment, and prosecution.  In identifying each piece of purportedly admissible evidence that generally supports White's malicious prosecution cause of action under § 1983, White cites to Plaintiff's Exhibits 2, 3, 4, 8, 9, 10, 11, 12, 13, 18, 20, and 31.  This court will discuss each exhibit's admissibility (if at issue), its relation to White's claims, and its ultimate failure to create a triable issue of material fact.

White argues that Johnson and Mitchell falsely and maliciously swore to a second affidavit charging White with Theft of Property 1st, based on tainted identification made by Johnson, Mitchell, and Gordon in conjunction with Wal-Mart employees' statements.  In particular, White attempts to show a conflict in the identification of the man or men personally

_____

[5] The court will footnote instances when White's evidence is used in support of more than one claim.

[6] Specifically, White uses the same boilerplate citation statements for Plaintiff's Exhibits 2, 3, 4, 8, 9, 10, 11, 13, 20, 30, and 31 in all three claims.

[7] The slight exception being that some exhibits are relied on more heavily for some claims than others.  For example, the first page of Plaintiff's Exhibit 11 is used as support for all of White's claims, but page three of Plaintiff's Exhibit 11 is only used to support claims against Johnson and Mitchell for false arrest/imprisonment.

seen by Wal-Mart employees and viewed on the Wal-Mart surveillance tapes.[8]  As evidence, White presents the statements of Danny Dorn, K. Webb, and B. Pennic, all Wal-Mart employees at the time.  See White's Supp. Br. #2, pp. 25, 28, 32, 34[9] (citing Plaintiff's Exhibit 2 and/or Plaintiff's Exhibit 3 in support of his malicious prosecution claim).[10] White also submits reports by Johnson that fail to mention the race of the thieves, see id., at pp. 26-28, 30, 33-35 (citing Plaintiff's Exhibits 4, 8, 11),[11] and a report by Lagrone that identifies the subject as "John White, white male."  see id., at pp. 27, 29, 31, 34, 36 (citing Plaintiff's Exhibit 9).[12]

---

[8] The court notes that White, in his Supplemental Briefs, does not submit evidence detailing a host of other previous arguments, including: questioning the authenticity of the tapes and alleging alteration or fabrication, questioning the number of tapes in existence, alleging Wal-Mart stated they had a "face shot" of White in the store but then never producing it, and arguing that his indictment was obtained by misconduct because defendants learned that he was questioning the number and authenticity of the tapes.  See Pl. Resp. Br. in Opp. to Defs. Mot. for Summ. J., pp. 14, 15, 17, 25, 26.  These arguments were analyzed and ultimately found unconvincing in the court's initial November 10, 2004 Memorandum Opinion and Order regarding Summary Judgment.

[9] See id., at pp. 38, 41 (citing Plaintiff's Exhibit 2 and/or Plaintiff's Exhibit 3 in support of his false arrest/imprisonment claim against Johnson and Mitchell); id., at pp. 18, 21-22, 24 (citing Plaintiff's Exhibit 2 and/or Plaintiff's Exhibit 3 in support of his unlawful seizure claim against Gordon).

[10] In considering the directive of the Eleventh Circuit, this court finds Plaintiff's Exhibit 3, unsworn witness statements, inadmissible for the reasons articulated above with respect to Exhibit 10.  See Carr, 338 F.3d at 1273 n. 26 (citing Adickes, 398 U.S. at 158 n. 17) (holding "[u]nsworn statements 'do[ ] not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion.").  Nonetheless, even if Plaintiff's Exhibit 3 were admissible, White's attempt to create a conflict among witnesses surrounding the Wal-Mart thefts fails.

[11] See also id., at pp. 39-43 (citing Plaintiff's Exhibits 4, 8, and/or 11 in support of his false arrest/imprisonment claim against Johnson and Mitchell); id., at pp. 17-20, 22-24 (citing Plaintiff's Exhibits 4, 8, and/or 11 in support of his unlawful seizure claim against Gordon).

[12] See also id., at p. 40 (citing Plaintiff's Exhibit 9 in support of his false arrest/imprisonment claim against Johnson and Mitchell); id., at pp. 20, 23 (citing Plaintiff's Exhibit 9 in support of his unlawful seizure claim against Gordon).

White's argument that the witnesses' statements are conflicting is pure sophistry.  A contradiction or inconsistency does not exist merely because some witnesses do not mention the race of the accomplice.  White attempts to create a conflict out of statements that are not identical but do not conflict.  For instance, in Plaintiff's Exhibit 3, K. Webb refers to "a man" without specifying his race.  See Pl. Exh. 3, p. 1, l. 7, 11.  In Plaintiff's Exhibit 11, the Supplementary Offense Report dated June 21, 1999, Johnson recounts that when he visited Wal-Mart and met with K. Webb, K. Webb mentioned a "black man."  Pl. Exh. 11, p. 1, ll. 8-17.  Pennic does not differentiate between a white or black man, instead she refers to "a guy."  Pl. Exh. 3, p. 3, l. 8, p. 4, l. 11, 22.  Merely describing "a man" at one point, and then describing "a black man" later does not create a conflict.  There is no evidence of Pennic ever materially changing her description.  A conflict would exist if the statements of Webb and Pennic did mention the race of the accomplices, and it was a different race than what either had previously or later stated.  White also cites Plaintiff's Exhibit 12, arguing that it is in conflict with Plaintiff's Exhibit 3 because Plaintiff's Exhibit 12 identifies White as removing items such as weedeaters without payment and Plaintiff's Exhibit 3 only mentions a "man" looking at weedeaters and talking on the phone with a Wal-Mart employee.  See White's Supp. Br. #2, at p. 41 (citing Plaintiff's Exhibit 12, p. 2 and Plaintiff's Exhibit 3, p. 1, l. 7).  Again, the fact that White, a white male, was identified in one exhibit but only a "man" was described in another does not create a triable issue of fact as to whether the identification was tainted by conflicting statements.

Johnson's statements fail to create a conflict as well.  Not a single description in Plaintiff's Exhibit 2, Johnson's interview of Dorn, is materially different than the wealth of

supporting witness statements that led the Montgomery Police Department to investigate men working in concert to remove merchandise from Wal-Mart without paying for them.  Compare Pl. Exh. 2 (Dorn describing a white and a black man removing merchandise) with Pl. Exh. 4, p. 2 (Johnson states that Dorn informed him that a white and black man left the store through the garden center entrance without paying for merchandise).  In Plaintiff's Exhibit 4, a Supplementary Offense Report dated June 7, 1999, Johnson states that employees told him that "people" exited through the garden center without paying for merchandise. Pl. Exh. 4, p. 2, ll. 9-10.  Later in the same report, Johnson states that Dorn informed him that a white and black male were carrying merchandise through the parking lot and loading it into their car.  Id., at p. 2, ll. 43-51.  Identifying perpetrators as "people" in one sentence, and then as black or white later does not create a triable issue of fact as to whether White's identification was tainted by misconduct or malice.

White entreats this court to find a conflict in the varying degrees of non-conflicting descriptions that various employees gave during the theft investigation.  White fails to identify even one instance of a witness changing a statement in a material way, or one instance of Johnson or Mitchell conducting the investigation in a manner that is illogical or illegal.  White's contention that Johnson and Mitchell falsely and maliciously swore to a second affidavit charging White with a crime based upon "tainted identification made . . . with conflicting witness testimony" is thus wholly unsupported by the evidence.  See White's Supp. Br. #2, ¶ 23.

Next, White proffers Plaintiff's Exhibit 8 in an attempt to show malicious intent.  See id.,

¶ 24.[13]  Plaintiff's Exhibit 8 is a Supplementary Offense Report dated June 21, 1999, in which

Johnson recounts the manner in which he made an identification from the surveillance videotape.

A complete reading Plaintiff's Exhibit 8 fails to highlight even an iota of misconduct.  Rather,

the entire exhibit serves as a detailed log of the methodical manner in which Johnson attempted

to ascertain the identity of the thieves by soliciting the testimony of multiple witnesses.  White

points out that Johnson notes that he asked Gordon, who admittedly knew White, to view the

video tapes provided by Wal-Mart, "the very day they inquired about John White."  Id. at p. 29.

This court fails to see how this rises to the level of misconduct.

White cites his own deposition, in which he recounts his belief that various members of

the police department set out to ruin his business reputation based on his indictment.  See Pl.

Exh. 31.[14]   When pressed for specific instances or names, White answers:

> A.      Michael Britton, Mike Jemison, Rhett Hooper with MPD when he was there, Tim
> LaGrone -- I mean, I don't have a whole lot of names.  It was basically just, you
> know, well known that don't do business with me.
> Q.      And who is it that told them not to do business with you?
> A.      Sergeant Ron Short, now Lieutenant Short, with the state troopers told -- he was
> on the tact team at the time -- he told Mike Britton not to have any dealings with
> me.  He told some people up at Elmore County Sheriff's office of a training
> exercise not to do business with me.
> Q.      Who at Elmore County?
> A.      I don't remember.
> Q.      You said Mr. Short?
> A.      Sergeant Ron Short, Lieutenant Ron Short with ABI now.

---

[13] See id., at pp. 39-40, 43 (citing Plaintiff's Exhibit 8 in support of his false
arrest/imprisonment claim against Johnson and Mitchell); id., at pp. 19-20, 23  (citing Exhibit 8
in support of his unlawful seizure claim against Gordon).

[14] See also White's Supp. Br. #2, p. 43 (citing Exhibit 31 in support of his false
arrest/imprisonment claim against Johnson and Mitchell).

14

Q.    Who is it that told the police officers?
A.    The department.  Supposedly I'm not allowed at the police department.
Q.    But who is it that told --
A.    I'm not down there, I don't know.  It's common, you got, right now it would be Lieutenant Mike Gant, you know, would tell anybody, Mark Mitchell, it would be the Chief, it would be Purvis Fleming, Solomon, Coker -- well, Coker's gone -- Murphy, I mean, you got Essex, you got Madera.  I can go on and list like three or four hundred people.
Q.    Were you present when any of these persons told --
A.    No, I don't work there.  I wouldn't have the opportunity to be there.
. . .
A.    Mike Britton came to me and told me that Billy Gordon told him that I was a thief, not to trust me, stay away from me, you know, yada, yada, yada.
. . .
A.    It's one of those things where it's going on but you can't grab it, you can't put your hands on it.  It's behind closed doors, the phone calls that you don't know about.  You understand what I'm saying?

Id., at 551:10-553:21; see also id., at 540:5-541:15.  Even if the court ignored the fact that White's testimony is steeped in hearsay that is irreducible to admissible evidence if proffered at trial,[15] the claims set forth in White's statements are vague and conclusory and hence fail to create a triable issue of fact.  See id., at 552:13-14, 553:16-17 (noting that he "do[es]n't know" who is slandering his name, "[i]t's one of those things where it's going on but you can't grab it.").

White also cites Plaintiff's Exhibit 20, White's deposition in which he testifies that his bond was increased from $2,000 to $10,000 for the same charge, and Plaintiff's Exhibit 13, Johnson's Supplemental Offense Report dated June 24, 1999, for the proposition that he was

---

[15] For example, the statement that "Mike Britton came to me and told me that Billy Gordon told him that I was a thief," is hearsay and White offers no exception or manner in which this would be reducible to admissible evidence at trial.  See Macuba, 193 F.3d at 1322.

unlawfully detained and maliciously prosecuted.  See White's Supp. Br. #2 pp. 29-32, 35, 37.[16]

White's Supplemental Brief #2 argues that "at no time have Defendants ever contested that the

bond increased $8,000 or that they had no additional evidence to support the new charge or

increased bond amount."  Id., at p. 30.[17]  White is correct that Defendants do not dispute the bond

increase, but incorrect in his belief that Defendants are required to do so in light of White's

failure to offer any evidence that they were in any way involved with the setting of the bond.  As

a result, the court finds that White's repeated citations to Plaintiff's Exhibits 20 and 13 are

wholly irrelevant without some supporting evidence of misconduct on the Defendants' part in

relation to the bond increase.  Likewise, White's citation to Plaintiff's Exhibit 18 merely reflects

the fact that the case was "nolled prossed," which is irrelevant without some supporting evidence

of misconduct by Johnson or Mitchell.  See Pl. Exh. 18.[18]

       White also cites Plaintiff's Exhibits 9 and 10, statements by Lagrone, in support of his

contention that his identification, which led to his seizure, arrest, and prosecution.  See White's

Supp. Br. #2, at pp. 27, 29, 31, 34, 36.[19]  The court ruled Plaintiff's Exhibit 10 inadmissible as

an unsworn statement but will nonetheless address its insufficiency.  White uses these exhibits in

---

       [16] See also id., at pp. 41, 43 (citing Plaintiff's Exhibits 20 and 13 in support of his false
arrest/imprisonment claim against Johnson and Mitchell); id., at pp. 16, 21, 24 (citing Plaintiff's
Exhibits 20 and 13 in support of his unlawful seizure claim against Gordon).

       [17] See also id., at p. 41 (applying the same argument to the false arrest/imprisonment
claim against Johnson and Mitchell); id., at p. 21 (applying the same argument to the unlawful
seizure claim against Gordon).

       [18] White uses Plaintiff's Exhibit 18 only as evidence in support of his malicious
prosecution claim against Johnson and Mitchell.  See White's Supp. Br. #2, ¶ 29.

       [19] See also id., at p. 40 (citing Plaintiff's Exhibits 9 and 10 in support of his false
arrest/imprisonment claim against Johnson and Mitchell); id., at pp. 20, 23-24 (citing Plaintiff's
Exhibits 9 and 10 in support of his unlawful seizure claim against Gordon).

conjunction with each other, in an attempt to create a triable question of fact as to whether

misconduct was involved in the police department investigation's identification of White as one

of the perpetrators on the surveillance tape.  Namely, Lagrone recants his previous identification

of White, noting that he feared retaliation if he did not identify the man on the tape as White.

Defendants note that Lagrone's recantation is simply too vague to be probative since it merely

states that he "knew" he would face retaliation from the "administration" of the Montgomery

Police Department, but fails to name anyone within the "administration" who might retaliate,

much less Johnson, Mitchell, or Gordon.  Upon reconsideration, this court agrees.  In Williams

v. City of Albany, the Eleventh Circuit held that:

> that evidence as to the incredibility of a witness presented to the prosecuting
> attorney, which witness is then presented to a grand jury, is insufficient to support
> a claim against a qualified immunity defense.  The qualified immunity doctrine is
> intended to balance society's interest in providing a remedy for injured victims
> and discouraging unlawful conduct against the interest in enabling public officials
> to act independently and without fear of consequences.  Harlow, 457 U.S. at 819,
> 102 S.Ct. at 2739-40.  Once a witness tells a story which, if believed, would
> support criminal charges, society's interest swings in favor of the investigating
> officer presenting that witness to the proper authorities without fear of personal
> liability, absent subornation of perjury, as to which there is no evidence in this
> record.

936 F.2d 1256, 1260 (11th Cir. 1991).

In the instant case, the court is confronted with a staggering amount of evidence, both

admissible and inadmissible, from police reports, witness statements, and state court trial

transcripts to portions of White's own deposition, none of which shows any misconduct on the

part of any of the named Defendants.  Lagrone's inadmissible recantation is the lone exhibit that

vaguely casts doubt upon the administration's pursuit of an investigation that by all accounts,

was rightly centered on White.  See e.g., Wal-Mart Defs. Mot. for Summ. J., Exh. 1: White Dep.,

at 341:17-20 ("Q:  You're saying that they did not have probable cause?  A:  First indictment I

would say yes.  The second indictment, no."); id. at 343:9-12 ("Q: Okay.  And you've indicated

that you've worked in law enforcement long enough to know what probable cause is?  A: Yes,

sir.").  At the time the police presented the evidence to the prosecuting attorney, Lagrone had yet

to make his recantation.  As a result, the issue of Lagrone's credibility only arose after the police

presented the evidence to the prosecuting attorney, who in turn presented it to a grand jury.

After thoroughly reviewing each piece of evidence White submits on behalf of his federal § 1983

claim for malicious prosecution and finding no triable issue of fact, the court finds that Johnson

and Mitchell's motion for summary judgment is due to Granted.

       2.       § 1983 Fourth Amendment False Arrest/Imprisonment claim against Johnson and
               Mitchell

    White claims that "Defendants Johnson and Mitchell, without probable cause, falsely

imprisoned and detained [White] against [his] will, without [his] consent, and deprived [him] of

liberty and freedom by causing [White's] arrest, questioning, fingerprinting, photographing and

booking at a police station in the City of Montgomery, Alabama."  White's Supp. Br. #2, ¶ 34.

As repeatedly noted in the previous section, White's claims have tremendous similarities with

respect to the exhibits and arguments used.  In fact, between the malicious prosecution claim and

false arrest/imprisonment claim, White only slightly varies his statements to reflect the

differences between the alleged conduct of maliciously prosecuting him and the alleged conduct

of falsely arresting him.  Both claims revolve heavily around White's argument that he was

arrested (and later prosecuted) based on a tainted identification made by Johnson, Mitchell, and

Gordon in conjunction with Wal-Mart employees' statements.  See id. at ¶¶ 23, 36.  Even though

White focuses on describing his alleged false arrest, White nonetheless relies on many of the

same rote boilerplate statements and citations to the same portions of the same exhibits in his claim against Johnson and Mitchell for malicious prosecution under § 1983.  As a result, this court adopts its analysis in above section V.A.1, and will focus on only the new assertions and new evidence presented in support of White's false arrest/imprisonment.

White cites to the previously undiscussed Plaintiff's Exhibit 14, which he uses to establish the bare, undisputed facts of his detainment.  See Pl. Exh. 14, p. 1, ll. 1-12.  Without more, Plaintiff's Exhibit 14 fails to show any misconduct by Johnson or Mitchell.

White also cites to the previously undiscussed third page of Plaintiff's Exhibit 11[20] and Plaintiff's Exhibit 12, a June 23, 1999 Supplementary Offense report that White argues identifies him as removing weedeaters and an air conditioner without payment.  See White's Supp. Br. #2, at pp. 41-42.  White cites to the third page of Plaintiff's Exhibit 11 that notes that in Johnson's interview with Robert Brown, Brown states that he saw a black male talking with Lamar Nelson, a Wal-Mart employee then suspected of assisting thefts, on May 30, 1999.  See id., p. 42.  White then argues this description is in conflict with other descriptions that identify a white male as a culprit, such as parts of the second page of Plaintiff's Exhibit 12, which is a document from Wal-Mart detailing its losses on various days.

A close examination of the evidence reveals that Brown's recollection of a black male in Plaintiff's Exhibit 11 is, in fact, corroborated by Plaintiff's Exhibit 12, which details that on May 30, 1999, the day Brown is recalling, Wal-Mart records indicate a weedeaters were stolen by a black man *and* a white man.  Pl. Exh. 12, p. 2 (in noting that three weedeaters were stolen that

---

[20] Although White cited Exhibit 11 in support with his malicious prosecution claims, White cited only to the first page.  See White's Supp. Br. #2, pp. 27-28, 34.

day, one of the weedeaters is prefaced with an "#," the symbol given to items <u>not</u> taken by a

white male).  White hopes to induce confusion by blurring the fact that there is evidence of

multiple thefts by multiple accomplices, particularly on May 30, 1999, the date White highlights.

White argues that "the statement John White was seen removing two weedeaters and an air

conditioner without payment is in conflict with" Brown's statement that he saw a black male

who had two weedeaters.  This court disagrees.  Nowhere in Brown's statement does he admit to

seeing a black man *removing* two weedeaters.  Instead, Brown admits to only seeing a black

male with two weedeaters while in the store.  White's attempt to create a conflict from the

multitude of witnesses and accomplices fails.  In White's attempt to obfuscate what the evidence

shows, one can almost lose sight of the fact that White admitted that the image of the accomplice

on the surveillance tape used in part to arrest and prosecute him remained the same throughout

the videotape, <u>see</u> City Defs. Mot. for Summ. J., Exh. 8: White Dep. at 244:14-15 ("Q: Did [the

tape] show a different person? A: No it didn't."), and further admitted that this person was white.

<u>Id.</u> at 256:23.  This court finds that Plaintiff's Exhibit 11 and 12 fail to create a triable issue of

material fact.

White also cites portions of his deposition in which he details his tumultuous past with

Gordon, suggesting this past history motivated Defendants to falsely arrested him.  <u>See</u> Pl. Exh.

30, at 534:9-538:23;[21] City Defs. Exh. 8, at 534:9-539:16, 317:23-323:10.  This court finds that

---

[21] In White's Supplemental Brief #2, White cites to Plaintiff's "Exhibit 30, Deposition of
White, page 534, line 9 *through page 539, line 11*."  White's Supp. Br. #2 at p. 17 (emphasis
added).  Plaintiff's Exhibit 30, however, only includes White's Deposition (which is also cross
listed City Defendants' Exhibit 8) up to page 538.  Additionally, further down on the same page,
White cites to Plaintiff's "Exhibit 30, Deposition of White, page 535, line 18 through page 537,
line 5."  <u>Id.</u>  Plaintiff's Exhibit 30 does not include these pages.  As a result, the court's citation
is only to the pages actually submitted as evidence.

White's testimony summarizing his past interactions with Gordon is irrelevant to the case at hand without admissible evidence of any animosity on Gordon's part actually affecting the investigation admittedly led by Johnson.  See White's Supp. Br. #2, ¶ 22 (stating that "Defendant Johnson was the lead case agent for the prosecution of Plaintiff in both criminal cases against Plaintiff, and was responsible for all investigations in relation to each criminal action.").  White presents no admissible evidence creating a causal link between his past bad blood with Gordon and Johnson and Mitchell's investigation of White that led to his arrest, detainment, indictment, and prosecution.  As the Williams court noted, "[e]vidence as to the incredibility of a witness presented to the prosecuting attorney, which witness is then presented to a grand jury, is insufficient to support a claim against a qualified immunity defense."  936 F.2d at 1260.  "Reasonable police investigators must be secure in the knowledge that they can present evidence of a crime to the proper charging officials without worry of suit, so long as they do not fabricate evidence or submit evidence with certain knowledge of its falsity."  Id.  Here, there is no evidence that anyone, even Gordon, intentionally submitted testimony they knew to be false or intentionally concealed material defects in the case.  See id.  Though White contends Gordon used his position within the police office to cause a false identification, White's bare allegations of impropriety are insufficient to create a triable issue of fact in light the overwhelming amount of undisputed evidence showing a properly conducted investigation, indictment, and prosecution.  Ultimately, because White's evidence of false arrest/imprisonment by Johnson and Mitchell fails to create a triable issue of material fact and Johnson and Mitchell's motion for summary on this claim is due to be Granted.

      3.       § 1983 Fourth Amendment Unlawful Seizure claim against Gordon

The court has previously addressed each of White's contentions with respect to the alleged tainted identification made by the police, including Gordon, in conjunction with Wal-Mart employees and hereby adopts the above reasoning with respect to Plaintiff's Exhibits 2, 3, 4, 8, 9, 10, 11, 13, 20, 30, 31, and City Defendants' Exhibit 8 as equally applicable to Gordon. White introduces no evidence in support of his claim against Gordon that is not already used in support of his claims against Johnson and Mitchell.  As a result, Gordon's motion for summary judgment is due to be Granted.

Ultimately, White fails to make a showing, sufficient to overcome the claim of qualified immunity, that Defendants Johnson, Mitchell, and Gordon's actions were of the type that a reasonable police investigator would know violated the suspect's clearly established constitutional rights.  "Reasonable police investigators must be secure in the knowledge that they can present evidence of a crime to the proper charging officials without worry of suit, so long as they do not fabricate evidence or submit evidence with certain knowledge of its falsity."  Id. There is no evidence that the individual officers involved here intentionally submitted testimony they knew to be false or intentionally concealed material defects in the case.  This court erred when it earlier determined that the record contained disputed facts which would preclude a summary judgment in favor of the defendants on the basis of qualified immunity.

B.      State claims against Johnson, Mitchell, and Gordon

In its earlier Memorandum and Opinion regarding the motions for summary judgment, this court allowed both federal and state claims of malicious prosecution and unlawful seizure to proceed.  Because the evidence for both the federal and state law claims of malicious prosecution were identical, in light of the court's reconsideration of every admissible piece of evidence

regarding White's federal claims, summary judgment is also due to be Granted as to White's remaining state claims against Johnson, Mitchell, and Gordon.

C.       Previously addressed federal and state claims against Defendants who did not appeal

In remanding this case, the Eleventh Circuit left intact this court's findings with respect to any party not involved in the appeal, specifically, Wal-Mart, Callin, Dorn, Reese, Coker, and Gant.  This opinion in no way changes the November 10, 2004 Memorandum Opinion's analysis with respect to the claims that were not appealed.  Nonetheless, to the extent any other portion of this court's November 10, 2004 Memorandum Opinion's analysis of White's other claims against other Defendants, namely Wal-Mart, Callin, Dorn, Reese,[22] Coker, and Gant[23] was vacated, this court reaffirms the Order Granting Summary Judgment as to all other Defendants and dismissing with prejudice the claims against Defendants Wal-Mart, Callin, Dorn, Reese, Coker, and Gant.  See Nov. 10, 2004 Mem. Op. and Order, section IV.A.1-2 - IV.B; see also White's Supp. Br. #1 (in which White concedes that he "does not dispute this Court's ruling dismissing . . . Defendant Coker and Gant (Order dated November 10, 2004).").

## VII. CONCLUSION AND ORDER

For the reasons discussed above, it is hereby ORDERED as follows:

1.  The Renewed Motion to Strike is GRANTED.

2.  Defendants Dewayne Johnson, Mark Mitchell, and Billy Gordon's Motion for Summary Judgment is GRANTED.

---

[22] See Nov. 10, 2004 Mem. Op. and Order, section IV.A.1-2.

[23] See Nov. 10, 2004 Mem. Op. and Order, section IV.B.

3.  Defendants Wal-Mart, Gary Callin, Danny Dorn, and Michael Reese's Motion for

Summary Judgment is GRANTED.

4.  Defendants Mike Gant and Mike Coker's Motion for Summary Judgment (Doc. #61)

is GRANTED.

Final Judgment will be entered in accordance with this Memorandum Opinion.


Done this 29th day of July, 2005.


/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE